# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD A. ABRAHAM, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 15-632 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| GREATER NEW CASTLE ) | |
| COMMUNITY FEDERAL ) | |
| CREDIT UNION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

This matter is before the Court upon Motions to Dismiss filed by Defendants GEM Building Contractors & Developers, Inc. ("GEM") (Doc. 15); Defendant Newspaper Holdings, Inc. d/b/a *New Castle News* ("*New Castle News*") (Doc. 38); and Defendants W.D. Wright Contracting ("W.D. Wright"), Corey J. Crowther, Dave Hunter, Robert A. Black, Harry Marquette, Jacob L. McConnell, Corey Lee, and Christopher K. Myers (collectively, the "Construction Crew") (Doc. 20). For the reasons that follow, GEM's Motion will be granted; *New Castle News*'s Motion will be granted; and the Motion filed by W.D. Wright and the Construction Crew will be granted in part and denied in part.

### BACKGROUND

Plaintiffs Todd and Ronald Abraham (collectively, "Abraham") is/are insurance agent(s) who own and operate Abraham & Petrini Insurance Agency, Inc., located in New Castle, Pennsylvania. Complaint (Doc. 1) ¶ 24. In January 2014, the Greater New Castle Community Federal Union ("Credit Union") commenced construction on a new branch next door to

Abraham's insurance business. Id. ¶¶ 26-27. In order to facilitate the construction of the new branch, Abraham and the Credit Union entered into an Easement and Agreement ("Easement") on April 16, 2014, conveying a perpetual easement/right of way to the Credit Union across Abraham's property for the purpose of performing construction work on the new bank branch. Id. ¶¶ 29-30; Easement (Doc. 1-1). Abraham contends that the terms of the Easement restricted GEM to performing work only on weekends so as not to interfere with Abraham's business. Id. ¶¶ 35-38.

The general contractor for the construction project, GEM, subcontracted with W.D. Wright for the installation of a storm sewer. Id ¶ 28, 37. On July 23, 2014, Abraham arrived at work to find the Construction Crew – each of whom is an employee of W.D. Wright – digging a trench along the front of Abraham's property on a workday. Id. ¶¶ 39-41. Abraham informed Crowther, the foreman, that he did not want any work performed on weekdays because it would interfere with his business. Id. ¶ 42.

The following day, July 24, 2014, Abraham again confronted the Construction Crew and demanded that they stop excavating in front of his property during the work week. Id. ¶ 48. When Crowther refused to withdraw his workers, Abraham removed a licensed firearm from his holster and held it at his side while instructing the Construction Crew to leave his property. Id. ¶ 50. The Construction Crew contacted the police, and two Neshannock Township police officers arrived at the scene. Id. ¶¶ 54-55. Members of the Construction Crew[1] informed the police officers that Abraham had "brandished" the firearm at them, "racked the slide which charged the weapon," and pointed it at the Construction Crew members working on the property.

---

[1] Defendant Harry Passerrello ("Passerrello"), a board member of the Credit Union, also witnessed the exchange and spoke with the police.

Id. ¶ 56. Despite Abraham's protest to the officers that the Construction Crew was trespassing on his property, the officers permitted the crew to continue working. Id. ¶¶ 61, 64.

Abraham denied that he ever pointed his gun at anyone. Id. ¶¶ 56-58. Nonetheless, he was arrested and charged with aggravated assault, simple assault, making terroristic threats and reckless endangerment. Id. ¶ 60. Those proceedings resulted in his placement in an Accelerated Rehabilitative Disposition, or ARD, for three months. Id. ¶ 77.

On July 25, 2014, the *New Castle News* published a front-page article (the "Article") about the incident. Id. ¶ 66; Article (Doc. 1-3). Abraham contends that the Article falsely reported the same inaccurate story that the Construction Crew provided to police concerning Abraham's behavior with the gun during the incident. Id. ¶ 68.

**ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

Abraham's Complaint contains nine separate causes of action based on his confrontation with the Construction Crew and the aftermath thereof. Count I asserts a breach of contract claim against the Credit Union. Counts II and III assert claims of trespass and nuisance against the Construction Crew. Count IV claims defamation by the *New Castle News*, Passerrello and the Construction Crew. Count V seeks to impose vicarious liability against W.D. Wright for the tortious acts allegedly committed by the Construction Crew in Counts II, III and IV.

3

Count VI raises a vicarious claim against GEM based on the allegations in Counts II and III. Counts VII and VIII assert claims pursuant to 42 U.S.C. § 1983 against the police officers and Neshannock Township. Finally, Count IX sets forth a conspiracy claim against all Defendants.

The instant Motions to Dismiss address Counts II, III, IV, V, VI and IX.

### A.     <u>Count II (Trespass)</u>

Under Pennsylvania law, the intentional tort of trespass is defined as the "unprivileged, intentional intrusion upon land in possession of another." <u>Boring v. Google, Inc</u>., 362 F. App'x 273, 281 (3d Cir. 2010) (quotations omitted). However, "[c]onduct [that] would otherwise constitute a trespass is not a trespass if privileged." Restatement of Torts (Second) § 158, comment 3. One such privilege exists where the intruding party has been granted right of entry pursuant to a valid easement. <u>Kennedy v. Consol Energy Inc</u>., 116 A.3d 626, 635-36 (Pa. Super. 2015).

In the instant case, the Construction Crew Defendants and W.D. Wright contend that their entry onto Abraham's land did not represent a trespass because their entry was pursuant to a valid construction easement. Abraham contends that the privilege does not apply because the Easement granted entry only on weekends and non-business hours, rather than during the work week. Critically, the parties agree that "the interpretation of the Easement will control the rights among the parties with respect to the alleged trespass upon Plaintiffs' property." W.D Wright's Brief in Support (Doc. 21) at 9; Abraham's Brief in Opposition (Doc. 25) at 7.

Because the parties agree that the success of Abraham's trespass claim is entirely dependent upon the interpretation of a contract, the gist of the action doctrine bars Abraham's trespass claim. "Generally, the gist-of-the-action doctrine precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties'

4

relationship." Sullivan v. Chartwell Investment Partners, LP, 873 A.2d 710, 718 (Pa. Super. 2005). The essence of a tort claim is grounded in a contract where, *inter alia*, "the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." Hults v. Allstate Septic Systems, LLP, No. 06-0541, 2007 WL 2253509 at *10 (M.D. Pa. Aug. 3, 2007) (citation omitted).

In the instant case, the scope of the right of entry granted to the Credit Union and its contractors, including W.D. Wright and the Construction Crew, is entirely defined by the Easement.[2] Abraham's trespass claim is thus "wholly dependent" upon the ultimate interpretation of that contract. Consequently, that claim is barred by the gist of the action doctrine and must be dismissed. See, e.g., eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (stating that the doctrine bars tort claims where the "success of [the tort claim] is wholly dependent on the terms of a contract").

### B.   Count III (Nuisance)

In his Brief in Opposition to W.D. Wright's Motion to Dismiss, Abraham consents to the dismissal of Count III.

---

[2] Abraham's suggestion that the Easement only applies to the Credit Union, not to the contractors and subcontractors hired to actually perform the work contemplated by the Easement, is frivolous. The allegations in the Complaint and the plain language of the Easement make clear that the purpose of the Easement was to permit the Credit Union to perform construction work on the property. Abraham's contention that W.D. Wright and the Construction Crew were not permitted on the property pursuant to the Easement necessarily implies that the Credit Union itself, without the benefit of construction contractors, was somehow required to construct the sewer line. This is both patently absurd and contrary to law. See, e.g., KBZ Communications Inc. v. CBE Technologies, LLC, 2015 WL 8125217, at *3 (3d Cir. 2015) (noting that the agents and employees of a contracting party "receive coextensive protection from the gist of the action doctrine").

## C. Count IV (Defamation)

Count IV of the Complaint attempts to state claims for defamation against Passerrello, the Construction Crew and the *New Castle News*.[3] Abraham contends that each member of the Construction Crew defamed him by falsely claiming to police officers that Abraham "brandished" his firearm at them, racked the slide to charge the weapon, and then pointed it at them to force them to leave the property. He further contends that the *New Castle News* defamed him by publishing an article containing those same false accusations. Both parties have moved to dismiss on the grounds that the allegedly defamatory statements were privileged.

### 1. Defamatory statements by the Construction Crew

A claim for defamation can be defeated by establishing any of the following: (1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; or (3) the character of the subject matter of a defamatory comment is of public concern. 42 Pa. Cons. Stat. § 8343(b). Notably, "statements made by private parties solely to law enforcement officials in which an accusation of crime is made for the purpose of inducing prosecution of criminal charges are absolutely privileged as statements preliminary to judicial proceedings." Pennoyer v. Marriott Hotel Services, Inc., 324 F.Supp.2d 614, 619 (E.D. Pa. 2004) (citation omitted). This absolute privilege applies even where "such statements ultimately prove to be false or maliciously motivated." Pawlowski v. Smorto, 588 A.2d 36, 42 (Pa. Super. 1991). The Construction Crew defendants seek dismissal on this basis, arguing that the statements made to police officers concerning Abraham's behavior with the firearm, even if false or malicious, were made to law enforcement officials for the purpose of initiating criminal charges.

---

[3] Passerrello has not filed a motion to dismiss.

To the extent that the crew members' statements were directed *only* to the police, such as those statements contained in the written police reports, see id. ¶ 57, the Court agrees that those statements are absolutely privileged. Pennoyer, 324 F.Supp.2d at 619. However, Abraham also alleges that the Construction Crew defendants made false statements to (or in the presence of) a reporter for the *New Castle News*. Compl. ¶¶ 56-57. The privilege for statements to law enforcement does not extend to statements made to any other audience. Compl. ¶ 56; see Pawlowski, 588 A.2d at 42-43 (privilege applies to statements made "*solely* to law enforcement officials" and not "republished to any other audience") (emphasis added). Abraham's defamation claim against the Construction Crew may proceed to the extent that it is based on statements made to or in the presence of the reporter.

2. Defamatory publication by the *New Castle News*

According to Abraham, the *New Castle News* defamed him by publishing a front-page article on July 25, 2014, describing the incident between Abraham and the Construction Crew. The *New Castle News* contends that the article is subject to the fair report privilege.

Pursuant to the fair report privilege, "a newspaper has the privilege to report the acts of the executive or administrative officials of government" so long as "the newspaper account is fair, accurate and complete, and not published solely for the purpose of causing harm to the person defamed." Sciandra v. Lynett, 187 A.2d 586, 600 (Pa. 1963). Pennsylvania courts "give a somewhat broad interpretation to the concept of 'reports of an official action or proceeding.'" Hudak v. Times Pub. Co., Inc., 534 F.Supp.2d 546, 572 (W.D. Pa. 2008). Thus, courts have routinely applied the privilege to police reports concerning arrests, arraignments and recently filed criminal charges. Hudak, 534 F.Supp.2d at 562-63 (newspaper report featuring comments by a district attorney concerning a recent arrest gave rise to privilege); Mathis v. Phil.

7

Newspapers, Inc., 455 F. Supp. 406, 4165 (E.D. Pa. 1978) (report based on information supplied by the Philadelphia Police Department and the FBI was privileged); see also Restatement of Torts (Second) § 611, comment h ("[a]n arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the [fair report] privilege").

A careful review of the newspaper article in question demonstrates that the article accurately and fairly summarizes the content of the official witness statements provided to the police by the Construction Crew for the purpose of initiating criminal proceedings against Abraham. See Police Reports (Doc. 1-2); Article (Doc. 1-3). Although Abraham argues that the newspaper's reporting "may be based in part on interviews with the Construction Crew Defendants" rather than official reports, no such allegation appears in the Complaint. Brief in Opposition to *New Castle News'* Motion to Dismiss (Doc. 45) at 8. Nor does Abraham allege that the newspaper report embellished or inaccurately portrayed the accusations described in the witness-reports. Accordingly, Abraham's claims against the *New Castle News* are barred by the fair report doctrine and must be dismissed.

### D.     Counts V (Vicarious Liability – W.D. Wright)

In Count V, Abraham asserts that W.D. Wright is vicariously liable for the allegedly tortious acts of the Construction Crew described in Counts II (trespass), III (nuisance) and IV (defamation). However, in the absence of an underlying tort by the employee, there can be no vicarious liability on the part of an employer. See, e.g., Dempsey v. Bucknell Univ., 76 F. Supp.3d 565, 585 (M.D. Pa. 2015) ("Because there is no underlying liability on the part of [the employee], there can be no vicarious liability on the part of Bucknell."). Abraham's trespass claim is barred by the gist of the action doctrine, and his nuisance claim has been withdrawn.

In the absence of any underlying liability, Abraham's vicarious liability claims based on those torts must be dismissed.

On the other hand, the Court already has concluded that Abraham's Complaint states a claim for defamation against the Construction Crew. Generally, "an employer is liable for intentional torts, including defamation, committed by its employees within the scope of their employment." Genesis Intern. Holdings v. Northrop Grumman Corp., 238 F. App'x 799, 802 (3d Cir. 2007). For pleading purposes, it appears that the Construction Crew were acting within the scope of their employment when the confrontation with Abraham (and subsequent interaction with police and the press) occurred, and W.D. Wright's Motion to Dismiss does not challenge Abraham's allegations on this basis. At this stage in the proceedings, Abraham has sufficiently pleaded that W.D. Wright may be vicariously liable for the allegedly defamatory comments made by its employees.

### E. Count VI (Vicarious Liability - GEM)

Count VI alleges that GEM is vicariously liable for the tortious acts of its subcontractor, W.D. Wright, in "performing work on Plaintiffs' property weekdays during business hours in violation of the Easement." Compl. ¶ 113. As discussed above, Abraham has failed to state a claim for trespass against either W.D. Wright or its employees. Moreover, a general contractor may only be held liable for the tortious acts of its independent subcontractor to the extent that the general contractor exercised "control over the means and methods of the contractor's work." Warnick v. Home Depot U.S.A., Inc., 516 F.Supp.2d 459, 467 (E.D. Pa. 2007). Abraham's allegations in this regard are entirely conclusory. See Compl. ¶ 113 ("[u]pon information and belief, GEM ordered, directed, instructed, and/or authorized . . . the tortious acts discussed herein"); ¶ 114 ("[u]pon information and belief, GEM retained control over the manner in which

9

the work on Plaintiffs' property was performed"). For each of these reasons, Abraham's vicarious liability claim against GEM will be dismissed.

### F. Count IX (Conspiracy)

Although Count IX of the Complaint purports to state a claim for civil conspiracy, Abraham has failed to support his claim with the type of particularized factual averments required to make out a conspiracy claim. See, e.g., Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989) ("Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient."). The only "fact" contained in Count IX of his Complaint is the vague allegation that the defendants "willfully and outrageously conspired and acted in concert and with a common purpose or design" to cause him harm. Compl. ¶ 130. Even when coupled with the allegations contained elsewhere in the Complaint, Abraham has failed to allege any of the necessary elements of civil conspiracy. Rose, 871 F.2d at 366. This claim will be dismissed.

Consistent with the discussions above, the Court hereby enters the following:

## II. ORDER

The Motion to Dismiss (**Doc. 20**) filed by W.D. Wright and the Construction Crew Defendants is **GRANTED** with respect to Counts II, III and IX, and **DENIED** with respect to Counts IV and V; the Motion to Dismiss (**Doc. 15**) filed by GEM is **GRANTED**;[4] and the

---

[4] GEM also has filed Motions to Dismiss the Cross-Claims brought against it by Defendants Passerrello and the Credit Union (*see* GEM's Mot. at Doc. 26), and Neshannock Township and its police officers (*see* Mot. at Doc. 53). Substantively, the contents of GEM's Motions regarding the Cross-Claims are identical to GEM's Motion to Dismiss Abraham's underlying claims. *See* GEM's Brs. in Supp. of Mots. Dismiss Cross-Cls. (Docs. 27 & 54). GEM's

Motion to Dismiss (**Doc. 38**) filed by the *New Castle News* is **GRANTED**.  Finally, to the extent that the above-Motions have been granted, the Court's rulings and reasoning shall, as applicable, extend to Defendants' various Cross-Claims.

    IT IS SO ORDERED.

March 23, 2016                                                  s\Cathy Bissoon
                                                                            Cathy Bissoon
                                                                            United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

attempted incorporation of arguments misses the mark, however, because the Cross-Claim Plaintiffs allege that GEM is derivatively liable as to Abraham's claims against <u>them</u>, a matter unconnected to the merits of Abraham's claims against <u>GEM</u>.  Notably, the Cross-Claim Plaintiffs in question have *not* moved to dismiss Plaintiffs' underlying claims against them.  Had they done so, and been successful, *then* GEM could have joined those arguments and had the Cross-Claims against it dismissed.  Given the number of claims and cross-claims involved in this case, some degree of confusion is understandable.  In any event, GEM's Motions to Dismiss Cross-Claims (**Docs. 26 & 53**) are **DENIED**.